IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAY BALLARD                          *

            Plaintiff              *

            vs.                    *   CIVIL ACTION NO. MJG-11-779

FRANK LEONE, et al.                  *

            Defendants             *

*       *       *       *       *       *       *       *

MEMORANDUM AND ORDER

The Court has before it Plaintiff's Motion to Remand
[Document 12], and the materials submitted relating thereto.
The Court has held a hearing and has had the benefit of the
arguments of counsel.


I.   BACKGROUND[1]

At times relevant hereto, the Castle Road Construction
Company ("Castle Road") in Harford County, Maryland had between
ten and fifteen employees.  In February 2009, Defendants Frank
Leone and Brian Jaeggi, two "Independent Associates" of
Defendant American Family Life Assurance Company of Columbus
("AFLAC") made a sales presentation at Castle Road's office.
Plaintiff, Jay Ballard ("Ballard"), a Castle Road roofing

---

[1]    The "facts" as set forth herein are as stated by Plaintiff
and not necessarily agreed upon by the Defendants.

foreman, purchased a Short-Term Disability Policy (the "Policy").  The Policy became effective in March 2009.

On December 7, 2009, Ballard underwent surgery for back problems.  After the surgery, Ballard was "unable to work for a substantial amount of time."  Pl.'s Compl. ¶ 14.  That month, he filed a claim with AFLAC seeking short-term disability coverage.

On February 4, 2010, AFLAC denied Ballard's claim due to Ballard's alleged misrepresentation of his health conditions on the Policy application.  AFLAC also indicated that Ballard's back problems were possibly a pre-existing condition that would not be covered.


II.  PROCEDURAL BACKGROUND

Ballard initially filed the Complaint [Document 2] in the Circuit Court for Baltimore City, Maryland, asserting state law claims.

> Count I - fraudulent misrepresentation
>
> Count II - negligent misrepresentation
>
> Count III – negligence
>
> Count IV – breach of contract
>
> Count V  - Maryland Consumer Protection Act.

Defendants timely removed the instant case pursuant to 28 U.S.C. §§ 1132, 1331, 1441(a)&(b).

Defendants contend that removal was proper because the Policy is an "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(1), that Ballard's breach of contract claim "attempts to duplicate, supplement, or supplant the civil enforcement remedies found at 29 U.S.C. § 1132, and therefore conflicts with the clear congressional intent to make ERISA a participant's exclusive remedy."  Def.'s Notice Removal 2. Defendants contend that once the federal court acquires jurisdiction over the "breach of contract," it can and should exercise supplemental jurisdiction over remaining state law claims pursuant to 28 U.S.C. § 1367(a).

By the instant motion, Ballard seeks remand contending that the Policy falls under the "safe harbor" exception established by the Secretary of Labor, see 29 C.F.R. § 2510.3-1(j), and is not an "employee welfare benefit plan" under 29 U.S.C. § 1002(1).

III. <u>LEGAL FRAMEWORK</u>

    A. <u>Federal Question Jurisdiction</u>

    A defendant may remove an action filed in state court to federal court if the case could originally have been filed in federal court.  28 U.S.C. § 1441(a); <u>see also</u> <u>Darcangelo v. Verizon Commc'ns, Inc.</u>, 292 F.3d 181, 186 (4th Cir. 2002). Defendants contend that the instant case presents a federal question.  Federal question jurisdiction gives district courts original jurisdiction over any civil case "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; <u>see also</u> <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63 (1987).

    "The burden of establishing federal jurisdiction is placed upon the party seeking removal."  <u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994) (citing <u>Wilson v. Republic Iron & Steel Co.</u>, 257 U.S. 92 (1921)).  The party seeking removal must establish existence of federal jurisdiction by a preponderance of the evidence.  <u>Johnson v. Nurex Research, Inc.</u>, 429 F. Supp. 2d 723, 726 (D. Md. 2006).  Moreover, the Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction."  <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d 422, 425 (4th Cir. 1999).

IV.   <u>ERISA Preemption</u>

Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.  <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 208 (2004).

A state law claim relating to an employee welfare benefit plan is completely preempted if it falls within the scope of ERISA's civil enforcement provision, § 502(a), 29 U.S.C. § 1132.[2] <u>See</u> <u>Metro. Life</u>, 481 U.S. at 66.  ERISA defines "employee welfare benefit plan" in relevant part as "any plan, fund or program [that is] established or maintained by an employer . . .

---

[2]   ERISA Section 502(a) provides, in relevant part, that:

> A civil action may be brought (1) by a
> participant or beneficiary . . . (B) to
> recover benefits due to him under the terms
> of his plan, to enforce his rights under the
> terms of the plan, or to clarify his rights
> to future benefits under the terms of the
> plan;  .  .  .  (3) by a participant,
> beneficiary, or fiduciary . . . to obtain
> other appropriate equitable relief . . . to
> enforce any provisions of this subchapter or
> the terms of the plan.

29 U.S.C. § 1132(a).

for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of sickness, accident, disability, [or] death."  29 U.S.C. § 1002(1).

The Secretary of Labor has issued interpretive regulations to clarify the definition of the term "employee welfare benefit plan."  See 29 C.F.R. § 2510.3-1(a)(1).  The regulations establish a "safe harbor" from ERISA preemption, providing in pertinent part:

> (j) . . . For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative

6

services actually rendered in connection
with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). Thus, state law claims regarding

benefit plans that fall within the safe harbor provision are not

preempted by federal law.


V.   <u>DISCUSSION</u>

The issue presented is whether the Policy falls within

ERISA's safe harbor exception. Resolution turns upon whether

Castle Road exceeded the safe harbor permissible employer

functions and/or received any consideration in connection with

the Policy.

In the instant case, AFLAC asserts that Castle Road

exceeded the safe harbor function limitations by:

1.   Endorsing the Policy;

2.   Deciding that the Policy was to be made available
     to all employees;

3.   Selecting the types of benefits to be offered and
     the absence of a waiting period;

4.   Selecting AFLAC as the insurer;

5.   Serving as plan administrator;

6.   Fulfilling all filing, reporting and disclosure
     requirements;

7.   Having the right to enter into contracts for
     additional benefits; and

> 8.   Receiving benefits from the tax consequences of pre-tax payroll deductions.

A.   <u>Employer Functions</u>

In order for an employer to meet the safe harbor criteria:

> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer.

29 C.F.R. § 2510.3-1(j)(3).

There is no doubt that Castle Road performed the expressly permitted functions of permitting AFLAC to publicize the program to employees, collecting premiums through payroll deductions and remitting them to AFLAC.  AFLAC contends, however, that Castle Road performed additional functions beyond those permitted under the safe harbor exception.

It appears well settled that, for the safe harbor exception to apply, employers can assume only a "very limited role." <u>Casselman v. Am. Family Life Assur. Co.</u>, 143 Fed. Appx. 507, 509 (4th Cir. 2005).  However, in this Court's view, that permissible "limited role" should be construed to include performing those acts that are inherently part of performing the expressly permissible functions.  If not, the courts would be

8

unjustifiably construing the regulation to eliminate the safe harbor provided therein.

### 1.  Endorsement

This Court finds that Castle Road did not "endorse" the Policy.  An employer "endorses" a program within the meaning of § 2510.3-1(j)(3) if "the employer or employee organization expresses to its employees or members any positive, normative judgment regarding the program."  Casselman, 143 Fed. Appx. at 510.

Endorsement has been found where the employer distributed a booklet bearing the employer's name and corporate logo and encouraged employees to carefully consider purchasing the plan, see Hansen v. Continental Ins. Co., 940 F.2d 971, 977 (5th Cir. 1991), and where the employer actively promoted the plan and encouraged employees to participate in the plan, see, e.g., Stoudemire v. Provident Life and Accident Ins. Co., 24 F. Supp. 2d 1252, 1256 (M.D. Ala. 1998).  See also Hughes v. Unum Provident Corp., 2006 U.S. Dist. LEXIS 1400 at *4 (M.D.N.C. Jan. 10, 2006) (holding that the safe harbor exception did not apply where the employer, a hospital, itself publicized the benefit program, assisted with claim submissions, advised each of its

employees about the program, and eventually decided to end the program).

In the instant case, Castle Road did no more than permit AFLAC to conduct a sales meeting on company premises.  Castle Road did not distribute benefit booklets or any plan documents, did not encourage employees to participate in the Policy, and did not otherwise express a positive judgment about the Policy except to the extent that a positive attitude is inherent in permitting AFLAC to publicize the Policy to the employees.  The mere facilitation of an on premises sales meeting for the convenience of the employees presents neither the kind nor degree of approval that can be held to constitute endorsement" within a rational interpretation of the regulation.

### 2.   Employee Availability

Castle Road did not restrict AFLAC with regard to AFLAC's decision whether it would offer the Policy to all employees or only certain employees.

When an employer takes the expressly permitted action of "permit[ing] the insurer to publicize the program to employees or members" it can either (1) take no position as to which employees the insurer would offer the program or (2) limit the insurer's decision in this regard.  In the instant case, Castle

Road took no position.  It may well be that where an employer
limits the class of employees to whom the program is offered, it
can be said to have exceeded safe harbor limitations on
function.  Cf. Casselman, 143 Fed. Appx. at 509 (in which the
safe harbor exception did not apply where employer excluded
salaried employees from participation in the program when
selecting program-eligible employees).

However, to hold that Castle Road made an "impermissible"
decision by not imposing a limitation on the insurer would be to
create an absurd "Catch-22" phenomenon.  The employer would be
exceeding its permissible functions if it imposed a limitation
and also exceeding its permissible functions if it did not
impose a limitation.

### 3.   Benefits, Waiting Period

Castle Road did not restrict AFLAC with regard to AFLAC's
decision as to the benefits to be offered in the Program or such
matters as to whether there would be a waiting period.

As with the matter of employee eligibility, when an
employer "permit[s] the insurer to publicize the program to
employees or members" it can either (1) take no position as to
which benefits (and waiting period) the insurer would offer or
(2) limit the insurer's decision in this regard.  In the instant

case, Castle Road took no position.  Cf. Moore v. Life Ins. Co.
of N. Am., 708 F. Supp. 2d 597, 607 (N.D. W. Va. 2010), (safe
harbor exception did not apply where the employer American
Airlines negotiated the policy by bargaining the premium
amounts).

Here, as with the matter of whether AFLAC would offer
coverage to all, or some, employees, Castle Road did not
restrict AFLAC or seek to influence the insurer's decision.
Even if a decision on the matter by Castle Road would have
exceeded the permissible, the absence of a decision does not.


4.   Selecting AFLAC

The safe harbor provisions allow an employer to "permit the
insurer to publicize the program to employees or members."  In
the instant case, Castle Road extended this permission to AFLAC.
Accordingly, one can, as a matter of semantics, say that Castle
Road "selected" AFLAC.  However, necessarily inherent in the
permissible function of allowing an insurer to publicize a
program is the decision to permit a particular insurer to do so.
Cf. Casselman, 143 Fed. Appx. at 510 (in which the safe harbor
exception did not apply where employer engaged a consulting firm
to "ensure that AFLAC was a 'reputable and well thought of

insurance company'"").  This Court finds nothing done by Castle

Road that exceeded the permissible in this regard.


        5.  Plan Operational Functions

      The Defendants have not proven, by a preponderance of the

evidence, that the only actual functions that Castle Road

performed were any more than to collect premiums through payroll

deductions, to remit them to AFLAC, and to comply with the

consequent filing, reporting, and disclosure obligations.  The

regulations expressly permit the employer to collect premiums

through payroll deductions or dues checkoffs and to remit them

to the insurer.  Inherent in the express authority to collect

and remit premiums is the authority – indeed obligation – to

comply with applicable legal requirements, necessarily including

filing, reporting and disclosure obligations.  The Court finds

none of these functions beyond those permissible by the safe

harbor regulations.

      Defendants contend that Castle Road was a "plan

administrator."  AFLAC contends that, on the Payroll Account

Acknowledgment Form, AFLAC "expressly disclaimed any role as

plan administrator," Opp'n at 10 n.2, and therefore, Castle Road

must have served as plan administrator.[3]  If Castle Road did

actually assume the role of "plan administrator," the Policy

would almost certainly fall outside the safe harbor exception

because "a plan administrator or a trustee of a plan must, be

the very nature of his position, have 'discretionary authority

or discretionary responsibility in the administration' of the

plan within the meaning of section 3(21)(A)(iii) of [ERISA]."

29 C.F.R.  § 2509.75-8, D-3.  Holding discretionary authority or

discretionary responsibility in the administration of the plan

---

[3]   According to AFLAC, Castle Road's owner, Allan Gibbons, in
signing the Payroll Account Acknowledgment Form, checked a box
assuming legal duties as plan administrator.  See Hr'g Ex. 1.
Brian Jaeggi, the AFLAC independent associate who performed the
sales presentation at Castle Road, testified that the Payroll
Account Acknowledgment Form was not filled out by any Castle
Road representative prior to the sales presentation, and he did
not remember sitting down with Mr. Gibbons to complete the form.
Mr. Gibbons testified that he did sign the Payroll Account
Acknowledgment Form at the sales presentation (his only
interaction with AFLAC), but did not believe that it was filled
in when he signed it, as the document was replete with
misspellings and incorrect information that he would have
corrected.

    AFLAC also introduced a letter that it had generated
addressed to Mr. Gibbons enclosing "a packet containing the
documents necessary to establish a cafeteria plan with the
assistance of Flex One," including a "sample Flexible Benefits
Plan Document and Summary Plan Description."  See Hr'g Ex. 2.
There was no evidence presented to establish that Mr. Gibbons
had ever received, seen, or executed this document.  Nor was
there any evidence that Mr. Gibbons maintained or distributed
any type of plan documentation or information to his employees.
Based on the evidence presented at the hearing held on this
subject, this Court does not find that these documents establish
that Castle Road did more than permit payroll deductions with
respect to the plan.

would be an "additional function" that would trigger ERISA.  See Hughes, 2006 U.S. Dist. LEXIS 1400 at *12 ("[E]ven the slightest 'additional' functions performed by an employer in connection with a plan will trigger application of, and preemption of state claims by, ERISA"); Thompson v. American Home Assur. Co., 95 F.3d 429, 436 (6th Cir. 1996) ("where the employer is named as the plan administrator, a finding of endorsement may be appropriate").  But see Zavora v. Paul Revere Life Ins. Co., 145 F.3d 1118, 1121 (9th Cir. 1998) (holding that the designation of the employer as "plan administrator" in name only does not conclusively establish that a plan falls within ERISA).

However, AFLAC has not presented evidence establishing that Castle Road assumed the role of "plan administrator" or actually performed any administrative duties other than collecting and remitting premiums.  See Walls v. Lemmon, 2007 U.S. Dist. LEXIS 77393, *9-12 (S.D. W. Va. Oct. 17, 2007) (remanding to state court where defendant failed to provide sufficient evidence on third element of safe harbor exception); Burns v. Unum Group, 2010 U.S. Dist. LEXIS 132499, *9-10 (E.D. Mich. Dec. 15, 2010) ("after examining all of the relevant factual allegations, . . . there is not a showing of substantial employer involvement in the administration of the insurance policy").

15

Finally, the Court finds the existence of a right to enter into further contracts for further benefits immaterial.  There would, inevitably, be an opportunity for pertinent parties to enter into whatever future agreements they may wish, absent some express disclaimer.  Certainly, it is possible that some future arrangement would render a plan under that arrangement an EIRSA plan.  If and when there should be some pertinent future arrangement and a claim thereunder, the status of the plan as it would then exist may require re-examination.


B.  <u>Employer Benefits</u>

The safe harbor regulations require that:

> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j)(4).

There is no doubt that because, under the terms of the Policy it was possible for Castle Road to deduct the insurance premiums from employees' paychecks on a pre-tax basis, the employer (as well as the employees) obtained tax benefits.

Defendants contend that this benefit constitutes consideration impermissible by virtue of 29 C.F.R. § 2510.3-1(j)(4).

A "selling point" of the Policy would, inevitably, be the opportunity for employees to obtain benefits from pretax payroll deductions.  Hence, it is unlikely in the extreme that AFLAC would have decided to exclude this feature from the Policy.  In any event, Castle Road did not require the feature and, as with other aspects of the Policy, took no position as to the matter.

In any event, the consequential employer's tax benefits are an inherent consequence of a policy that includes a pre-tax payroll deduction.  These benefits are not paid by the insurer or the employee.  Indeed, these benefits are the inevitable consequence of the income taxation scheme.  They cannot reasonably be considered to be disqualifying "consideration" within the meaning of 29 C.F.R. § 2510.3-1(j)(4).[4]

---

[4]    In Acuna v. Connecticut Gen. Life Ins. Co., 572 F. Supp. 2d 713 (E.D. Tex. 2008), it appears that a Magistrate Judge issued a report and recommendation in a safe harbor case in which premiums were paid through pre-tax payroll deductions, stating that the consideration prohibition of 29 C.F.R. § 2510.3-1(j)(4) was not even in dispute.  Id. at 719, relying on Acuna v. Conn. Gen. Life Ins. Co., 2005 U.S. Dist. LEXIS 47469 at *39-40 (E.D. Tex. Aug. 10, 2005).  In its decision, the district court proceeded on this basis, holding that the safe harbor provisions had been violated in other respects.  See Acuna, 572 F. Supp. 2d at 726.

C.   Resolution

The Court finds that the Policy satisfies all of the requirements of the safe harbor exception.  Accordingly, the Policy is not an "employee welfare benefit plan" within the purview of ERISA.  Therefore, ERISA does not preempt any of Ballard's state law claims and there is no federal jurisdiction over the case.  See Walls, 2007 U.S. Dist. LEXIS 77393 at *9-12 (remanding to state court where defendant failed to provide sufficient evidence on third element of safe harbor exception).

V.   ATTORNEY'S FEES

Ballard seeks to have AFLAC to pay his attorney's fees and costs relating to the removal and remand of this issue.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  Any such award is at the Court's discretion.  In re Lowe, 102 F.3d 731, 733 n.2 (4th Cir. 1996).  "[T]he standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an

objectively reasonable basis exists, fees should be denied."

<u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005).

In this case, the Court finds AFLAC presented nonfrivolous arguments supporting its position on remand.  It did not act in bad faith, and had an objectively reasonable basis for removal.  <u>See</u> <u>Walls</u>, 2007 U.S. Dist. LEXIS 77393 at *11-12.  Therefore, the Court declines to award Plaintiff attorney's fees and costs.


VI.   <u>CONCLUSION</u>

For the foregoing reasons:

1.   Plaintiff Ballard's Motion to Remand [Document 12] is GRANTED.

2.    By separate Order, the Court shall remand the case to the Circuit Court for Baltimore City, Maryland.


SO ORDERED, on <u>Tuesday, February 28, 2012</u>.


_____/s/_____
Marvin J. Garbis
United States District Judge